# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TYTANYA BUXTON HAYNES,**

    **Plaintiff,**

    v.                                                             Case No. 17-CV-1187

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Tytanya Buxton Haynes seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

Buxton Haynes filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on June 30, 2012 due to anxiety, sciatica, herniated disc, sleep apnea, acid reflux, and migraines. (Tr. 255.) The claim was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on April 5, 2016. (Tr. 34.) Buxton Haynes testified at the hearing, as did Thomas Gusloff, a vocational expert ("VE"), and Hugh Savage, a medical expert. (*Id.*)

In a written decision issued July 13, 2016, the ALJ found that Buxton Haynes had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy; degenerative disc

disease of the cervical spine; headaches with light sensitivity; neuritis; cholelisthiasis; obstructive sleep apnea; asthma; status post total thyroidectomy and auto-transplantation; affective disorder; and an anxiety disorder. (Tr. 17.) The ALJ found that Buxton Haynes did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 18.) The ALJ found Buxton Haynes had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: lift up to twenty pounds occasionally and ten pounds frequently; stand and/or walk a total of four hours and sit six hours in an eight hour workday; occasionally operate foot controls with right lower extremity and frequently with the left; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional kneeling and crawling; frequent balancing, stooping, and crouching; avoid concentrated exposure to bright lights; avoid concentrated exposure to environments of respiratory irritants and dangerous moving machinery; avoid all exposure to unprotected heights; limited to simple and routine tasks performed at a variable pace, involving only end of the day production requirements with no hourly or other periodic production quotas; and occasionally interact with the public, coworkers, and supervisors. (Tr. 20.)

Although the ALJ found Buxton Haynes was unable to perform her past relevant work, the ALJ found that based on Buxton Haynes' age, education, work experience, and RFC, that jobs existed in significant numbers in the national economy that Buxton Haynes could perform. (Tr. 26.) As such, the ALJ found Buxton Haynes was not disabled from June 30, 2012 through the date of the decision (July 13, 2016). (Tr. 27.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1.)

# DISCUSSION

## 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## 2. *Application to this Case*

Buxton Haynes argues the ALJ erred by: (1) improperly rejecting the opinion of her treating psychiatrist, Dr. Gagrat and the opinion of her W2 caseworker, Kadeitra Winters-Wallace; (2)

improperly considering her subjective complaints; and (3) insufficiently analyzing whether she meets Listing 1.04(A). I will address each argument in turn.

### 2.1 Weight Given to Treating Providers

Buxton Haynes alleges the ALJ erred in rejecting the opinions of her treating psychiatrist, Dr. Gagrat, and her W2 case worker, Winters-Wallace. An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. The regulations distinguish "acceptable medical sources" from "other sources." Social Security Ruling ("SSR") 06-3p (rescinded effective March 27, 2017). Only "acceptable medical sources" can give a medical opinion and only "acceptable medical sources" can be considered treating sources, whose medical opinions may be entitled to controlling weight. *Id.* A treating physician's opinion about the nature and severity of the claimant's impairment is normally given controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with substantial evidence in the record. *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Id.* at 561.

Dr. Gagrat completed a form dated August 12, 2015, opining that Buxton Haynes suffered from generalized anxiety and a panic disorder. (Tr. 855.) Dr. Gagrat opined Buxton Haynes' problems with concentration and attention would frequently interfere with her work tasks, but noted that Buxton Haynes was making progress. (*Id.*) Specifically, she was not crying spontaneously and her panic attacks had decreased in frequency. (*Id.*) Dr. Gagrat opined that Buxton Haynes' pain leads to depression and her depression leads to reduced pain tolerance. (*Id.*) Dr. Gagrat opined Buxton

Haynes was moderately limited in her activities of daily living and social functioning and often experienced deficiencies of concentration, persistence, or pace. (Tr. 856.) Dr. Gagrat found Buxton Haynes experienced repeated episodes of deterioration or decompensation in work or work-like settings. (*Id.*) Dr. Gagrat opined Buxton Haynes would be absent from work more than three times per month due to her impairments. (*Id.*)

As to Buxton Haynes' ability to do work-related activities on a day-to-day basis, Dr. Gagrat opined that Buxton Haynes was seriously limited in her ability to maintain attention for two-hour segments; maintain regular attendance; work in coordination with others; deal with normal work stress; perform detailed or complicated tasks; and perform fast-paced tasks. (Tr. 857.) Dr. Gagrat opined Buxton Haynes was unable to complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace. (*Id.*) Dr. Gagrat ultimately concluded that Buxton Haynes was unable to work. (Tr. 858.) The ALJ assigned no weight to Dr. Gagrat's opinion, finding that the duration of treatment was unclear and that the opinion that Buxton Haynes was unable to work was not supported by the treatment records. (Tr. 25.)

Buxton Haynes argues the ALJ errs by failing to articulate the evidence supporting his conclusion and by ignoring treatment notes from both Dr. Gagrat and Mary Rust, Buxton Haynes' treating psychotherapist, which indicate variable functioning and support Dr. Gagrat's opinions about absenteeism and time off task. While the ALJ's rationale for rejecting Dr. Gagrat's opinion is brief, it is not incorrect. The record does not support restrictions as severe as what Dr. Gagrat opines. A view of Dr. Gagrat's own records confirms this. The first treatment record from Dr. Gagrat is dated November 3, 2014 in which Dr. Gagrat noted that Buxton Haynes is "still overwhelmed but feels more able to cope" and her panic attacks had decreased to once per week and her anxiety and

panic had generally decreased. (Tr. 1411–12.) Dr. Gagrat's record from December 1, 2014 noted that Buxton Haynes' panic attacks had decreased to one or two in three weeks and they were "mild ones—able to talk herself down." (Tr. 1415.) On January 26, 2015, Dr. Gagrat noted Buxton Haynes' mood was much better, her anxiety was much less, and she experienced no panic attacks. (Tr. 1419.) On May 27, 2015, Dr. Gagrat noted that Buxton Haynes' mood was better, she was not crying spontaneously, her anxiety had decreased, she only had one panic attack at her cousin's funeral, and her depression was well controlled. (Tr. 1428–29.) Dr. Gagrat's note from August 12, 2015 simply stated that he filled out forms for Buxton Haynes. (Tr. 1436.) The last treatment note in the record from Dr. Gagrat is from November 23, 2015, where he noted that Buxton Haynes' mood was level, she was able to cope despite having "a lot going on," she only had two panic attacks in six months, and her depression was "mostly level." (Tr. 1444–45.) Thus, while the ALJ could have more thoroughly cited Dr. Gagrat's treatment notes, it would not have helped Buxton Haynes' case.

Rust's treatment notes are also not helpful to Buxton Haynes' argument. Notably, Buxton Haynes treated with Rust far more frequently than she did with Dr. Gagrat, although part of the treatment period overlapped. While Rust noted Buxton Haynes experienced anxiety, a depressed mood, crying, and irritability throughout her treatment records (Tr. 1413, 1417, 1421, 1424, 1430, 1432, 1440), her most recent record from December 10, 2015 noted that Buxton Haynes' mood was even and that she was not having "any significant physical symptoms, has been feeling pretty well." (Tr. 1446.) Interestingly, while Rust's records clearly indicate more serious symptoms than do Dr. Gagrat's records, Rust opined on January 13, 2014 that Buxton Haynes is "an intelligent woman, capable of performing activities of daily life. Her abilities are only limited by finances." (Tr. 733.) Rust said Buxton Haynes had no impairment in concentration and task completion (Tr. 734) and

rated her prognosis as "good to excellent" (Tr. 735). On July 16, 2015, Rust completed another medical source statement form and opined to no limitations based on her anxiety and depression. (Tr. 848-52.) Given the fact Buxton Haynes treated much more frequently with Rust than she did with Dr. Gagrat and the fact that Dr. Gagrat's few records report relatively minor symptoms, the extreme inconsistency between the two providers' opinions lends further support to the ALJ's conclusion that Dr. Gagrat's opinion is unsupported by the record. Thus, the ALJ did not err in rejecting Dr. Gagrat's opinion.

Buxton Haynes further argues the ALJ erred by giving no weight to the opinion of her W2 case worker, Winters-Wallace. In January 2013, Winters-Wallace wrote a letter in which she stated that Buxton Haynes had been on Wisconsin Works since April 20, 2012 and was immediately placed into W2 Transition Placement due to visible and documented medical barriers. (Tr. 381.) Winters-Wallace noted that Buxton Haynes requested in-home appointments due to her constant pain and inability to handle being in the office. (*Id.*) Winters-Wallace concluded that Buxton Haynes was not a good candidate for work due to her constant pain from sciatica, anxiety attacks, and a herniated disc. (Tr. 382.) Winters-Wallace believed that while Buxton Haynes was very intelligent, she could not maintain a consistent work schedule due to pain. (*Id.*) Pain and anxiety also affected her concentration and memory. (*Id.*) Winters-Wallace opined that Buxton Haynes met the standard for disability under the SSA. (*Id.*)

The ALJ rejected Winters-Wallace's opinion because she is not a recognized medical source and because she addresses the effects of pain as a basis of an inability to work rather than mental illness symptomatology. (Tr. 25.) Under SSR 06-3p, Winters-Wallace, as a W2 caseworker, is considered an "other source." Although an "other source" is not entitled to controlling weight, the ALJ must still consider the evidence from these "other sources." *Id.* In weighing the evidence from

"other sources," the ALJ should consider: how long the source has known the individual and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. *Id.*

Again, the ALJ's analysis of Winters-Wallace's opinion is very brief. Further, the ALJ rejects the opinion primarily on the basis that Winters-Wallace "addresses the effects of pain as a basis of an inability to work rather than mental illness symptomatology." (Tr. 25.) This rationale is a bit unclear because while Winters-Wallace appears to have a Master of Science in Counseling (Tr. 382), there is no indication in the record that Buxton Haynes sought her services specifically for mental health treatment. Although there seems to be some confusion on the ALJ's part in weighing Winters-Wallace's opinion, this analysis is subject to harmless error review and I need not remand a case to the ALJ for further explanation if I can predict, with great confidence, that the result on remand would be the same. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). *See also McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result . . . That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be.").

A review of the records in this case convinces me that the ALJ would not reach a contrary conclusion on remand regarding the weight given Winters-Wallace's opinion. As stated above, when weighing the evidence from "other sources," the ALJ considers the factors articulated in 20 C.F.R. § 404.1527(c), (f). The bulk of Winters-Wallace's letter is not truly an opinion, but merely a summary of Buxton Haynes' statements regarding her functional abilities. (Tr. 381 - Functional Summary.)

As for the actual opinion evidence, Buxton Haynes acknowledges that Winters-Wallace is not a treating medical source. (Tr. 39.) Thus, it is unclear how Winters-Wallace has the expertise to opine that Buxton Haynes' physical and mental symptoms will be lifelong and she meets the criteria for disability under the SSA (Tr. 381–82), especially when her treating psychotherapist, Rust, stated that her prognosis was "good to excellent" (Tr. 735) and did not opine any limitations based on her anxiety and depression (Tr. 848–52). For these reasons, I do not find the ALJ erred in the weight assigned to Dr. Gagrat and Winters-Wallace's opinions.

### 2.2 Analysis of Subjective Complaints

Buxton Haynes argues the ALJ erred in assessing her subjective complaints. The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding her symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

Buxton Haynes argues the ALJ cherry-picked the record, ignoring Buxton Haynes' testimony regarding having panic attacks two to three times per week and migraine headaches that can last the whole day. (Tr. 50, 54.) Buxton Haynes further argues the ALJ ignored record evidence indicating she experienced pain. (Pl.'s Br. at 21–22, Docket # 14.) But the ALJ did consider Buxton Haynes' testimony and statements of disabling symptoms. The ALJ noted that Buxton Haynes stated that she can walk only one block, has difficulty putting on her shoes and socks because of her back, has back pain at a level fifteen on a ten point scale, gets migraines that last for hours and sometimes the whole day, is taking medications for her migraines and other impairments, has side effects from her medications, has worse back pain with moving around and bending, lying down helps the pain and she sometimes lies down all day, can sit fifteen to twenty minutes and can stand ten to fifteen minutes, and has depression, anxiety, and panic attacks. (Tr. 21.)

The ALJ determined, however, that Buxton Haynes' testimony lacked support in the medical record, while the RFC was supported by the objective medical evidence, the opinion of Dr. Savage, and the opinions of the state agency physicians. (Tr. 25.) The ALJ further found that despite finding Buxton Haynes' subjective complaints lacking record support, he would give her "the benefit of the doubt in assessing her functional limitations." (*Id.*) The RFC the ALJ crafted is fairly restrictive. The ALJ included limitations for the photosensitivity due to migraine headaches by limiting her exposure to bright lights, accounted for her diagnosis of asthma by limiting her exposure to respiratory irritants, and addressed her issues with pain and numbness in the right lower extremity by limiting her ability to operate her foot controls with her right lower extremity. (Tr. 20.) The ALJ also accounted for Buxton Haynes' back and leg pain through limiting her to sedentary work with no climbing on ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional kneeling and crawling; and frequent balancing, stooping, and crouching. (*Id.*) The ALJ even included

limitations arguably more restrictive than the record requires, such as including a limitation on interaction with the public and coworkers, despite Rust opining no limitations on social functioning. (Tr. 740.)

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted). I do not find the ALJ's analysis of Buxton Haynes' subjective complaints patently wrong. Thus, remand is not warranted on this ground.

### 2.3 The ALJ's Analysis of Listing 1.04

Finally, Buxton Haynes argues the ALJ's conclusion as to whether she met Listing 1.04 was perfunctory and internally inconsistent. The plaintiff has the burden of showing that her impairments meet or medically equal a Listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). To establish that an impairment or combination of impairments match or are equivalent to a listed impairment, a plaintiff must present medical findings that meet or are equal in severity to all of the criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990) (citing SSR 83–19 and 20 C.F.R. § 416.926(a)). The Seventh Circuit has stated that an ALJ's "failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (internal citation omitted). However, the court has also found that "the ALJ may rely solely on opinions given in Disability Determination and Transmittal

forms and provide little additional explanation . . . [if] there is no contradictory evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006). Furthermore, "[a]lthough an ALJ should provide a [listings] analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (internal citations omitted).

Buxton Haynes asserts she meets Listing 1.04(A). (Pl.'s Br. at 24.) Listing 1.04(A) states as follows:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

While the ALJ's analysis of Listing 1.04 is also brief, I can follow his reasoning. The ALJ states that while Buxton Haynes experiences pain and limited movement, not all of the objective and neurological criteria of Listing 1.04 are present. (Tr. 18.) The ALJ considered the testimony of Dr. Savage, the medical expert, who testified that he looked at Listing 1.04 and determined that Buxton Haynes did not meet it because the records did not show atrophy of the muscle. (Tr. 24, 63–64.) Further, the Disability Determination and Transmittal form indicate Buxton Haynes is not disabled. (Tr. 108–09.)

Buxton Haynes argues the ALJ's finding is internally inconsistent because while the ALJ noted that the record shows a positive straight leg raise on the right, a herniated disc, and an absent right Achilles reflex, the ALJ also found that the objective and neurological criteria for Listing 1.04(a) are not present. (Pl.'s Reply Br. at 6, Docket # 18.) But Buxton Haynes misstates the ALJ's

decision. The ALJ does not state that the objective and neurological criteria for Listing 1.04(a) are not present, he states that "all of the objective and neurological criteria are not present." (Tr. 18.) Thus, while the ALJ acknowledges that *some* of the criteria of Listing 1.04(A) are present (i.e., positive straight leg raise, absent Achilles reflex) (Tr. 21), not *all* of the criteria are present (such as the atrophy, as opined by Dr. Savage). Buxton Haynes presents no contrary evidence, such as an opinion by a treating provider, that she meets Listing 1.04(A). Without contradictory evidence, the ALJ was permitted to rely on Dr. Savage's testimony in finding Buxton Haynes did not meet Listing 1.04(A). Thus, the ALJ did not err in his analysis of Listing 1.04(A).

## CONCLUSION

Buxton Haynes argues the ALJ erred by improperly rejecting the opinions of Dr. Gagrat and Winters-Wallace, improperly considering her subjective complaints, and insufficiently analyzing whether she meets Listing 1.04(A). I find that the ALJ did not err and his decision is supported by substantial evidence. Thus, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of November, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge

-13-